848 F.2d 1244
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AMERICAN PARKING METER ADVERTISING, INC., Plaintiff-Appellee,
v.
VISUAL MEDIA, INC., Warren Lincoln Bouve, Michael Haughey
and Elizabeth F. Neer, Defendants-Appellants.
 No. 88-1114.
 United States Court of Appeals, Federal Circuit.
 May 3, 1988.
 
 Before RICH, DAVIS and NIES, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Visual Media, Inc. (VMI), appeals from an order of the United States District Court for the District of Massachusetts granting the motion of American Parking Meter Advertising, Inc. (APMA), for a preliminary injunction against VMI's alleged infringement of APMA's patent No. 4,453,325 by manufacturing or marketing its "MeterHat" device. We affirm.
 
 
 2
 VMI's renewed motion for stay of the injunction pending this appeal is denied. Decision of this appeal has been expedited.
 
 OPINION
 
 3
 To obtain a preliminary injunction in a suit for patent infringement, the patentee must establish four factors: (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships in its favor; and (4) that the issuance of the injunction will not disserve the public interest. T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc., 821 F.2d 646, 646-47, 3 USPQ2d 1316, 1317 (Fed.Cir.1987). The grant or denial of a preliminary injunction is within the discretion of the district court, and our review is limited to whether the court abused its discretion, committed an error of law, or seriously misjudged the evidence. Id.
 
 Infringement
 
 4
 The patentee bears the burden of showing a reasonable likelihood of success on the issue of infringement which may be carried by submitting the claims and the structure of the accused product. See Roper Corp. v. Litton Sys., Inc., 757 F.2d 1266, 1271, 225 USPQ 345, 348 (Fed.Cir.1985). "The grant of a preliminary injunction does not require that infringement be proved beyond all question, or that there be no evidence supporting the viewpoint of the accused infringer." H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 390, 2 USPQ2d 1926, 1929 (Fed.Cir.1987).
 
 
 5
 VMI argues that the district court applied the wrong legal standard in finding a reasonable likelihood that APMA will prevail on the issue of infringement. Although the court's memorandum opinion is devoid of analysis of the particular claim language, our review leads us to agree with the district court's conclusion.* Clearly, the relevant claims were considered and compared with the defendants' structure.
 
 
 6
 Specifically, VMI argues that the MeterHat contains no part substantially identical to the "cap strap" of the original parking meter and thus cannot literally infringe claims 14 and 15. The claim language, however, speaks in broader terms than just the cap strap, requiring only a "portion being substantially identical to a removable housing cover for the meter" (emphasis added). Admittedly, in the preferred embodiment shown in the specification, as in APMA's commercial embodiment, the only part removed and replaced is the cap strap which holds the dome in place. But "claims are infringed, not specifications." SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1121, 227 USPQ 577, 585 (Fed.Cir.1985) (in banc). If structural claims were limited to the illustrative embodiments described in the specification, there would be no need for claims at all. Id.
 
 
 7
 Thus, interpreting claims 14 and 15 broadly, and we have no reason not to, those claims can be read on the MeterHat even though it replaces both the cap strap and the dome and fastens in a slightly different manner than APMA's preferred embodiment. Accordingly, we agree with the district court's conclusion that APMA is reasonably likely to succeed on the merits of its infringement claim.
 
 
 8
 Irreparable Injury, Balance of Harms, and the Public
 
 Interest
 
 9
 VMI argues that the district court ignored the evidence on irreparable injury, balance of harms, and the public interest, and points out several reasons why these factors should be reweighed in its favor. We do not think, however, that the court so abused its discretion or seriously misjudged the evidence in evaluating these factors as to warrant reversal.
 
 Motion for Stay Pending Appeal
 
 10
 VMI's renewed motion for stay of the injunction pending appeal is rendered moot by this decision and is therefore denied. A preliminary injunction is effective only during the litigation and to stay it pending appeal would be to effectively deny it, which is the opposite of our decision.
 
 
 11
 NIES, Circuit Judge, dissenting.
 
 
 12
 I dissent. The district court's memorandum opinion is devoid, as the majority concedes, of analysis on certain points critical to support its grant of preliminary injunctive relief. For that reason, I would reverse and remand for the court to provide the necessary analysis. See, e.g., Pretty Punch Shoppettes, Inc. v. Hauk, No. 87-1504 (Fed.Cir. April 21, 1988) (district court order denying motion for preliminary injunction reversed and remanded because court failed to provide sufficient factual findings to allow meaningful review); Cordis Corp. v. Medtronic, Inc., 780 F.2d 991, 228 USPQ 189 (Fed.Cir.1985) (faulty analysis underlying district court's preliminary injunction order requires that order be vacated and matter remanded), cert. denied, 106 S.Ct. 1971 (1986).
 
 
 13
 Beginning with basic principles, because judicial intervention before the merits have been finally determined may unjustifiably damage the nonmovant, preliminary injunctive relief is "an extraordinary and drastic remedy" which courts grant "sparingly". 11 C. Wright & A. Miller, Federal Practice & Procedure: Civil Secs. 2947, 2948, at 424, 428, 446 (1973) (footnotes omitted). See also Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1578, 219 USPQ 686, 690 (Fed.Cir.) ("reluctance" to grant preliminary injunction because standard "unusually stringent"), cert. denied, 464 U.S. 996 (1983). The burden on APMA, as the party seeking such relief in a patent infringement case, is correspondingly heavy. Atlas Powder Co. v. Ireco Chems., 773 F.2d 1230, 1233, 227 USPQ 289, 292 (Fed.Cir.1985). Moreover, even after APMA satisfies the burden of proving its likelihood of success on the merits, it must satisfy three additional criteria for obtaining a preliminary injunction: irreparable injury, balance of hardship, and public interest. Roper Corp. v. Litton Sys., Inc., 757 F.2d 1266, 1271, 225 USPQ 345, 348 (Fed.Cir.1985).
 
 VALIDITY
 
 14
 The district court stated that "validity of the patent in issue presents a problem which may be difficult to resolve at the time of trial." It concluded that APMA had met its burden of clearly showing likely success on the issue of validity, however, solely on the basis that the presumption of validity was "sufficient." Summarizing its analysis, the court admitted it "had an opportunity only for a cursory glance at the prior art, and less than an adequate opportunity to study [VMI's] product."
 
 
 15
 APMA has the burden to show that the '325 patent will likely be held valid at trial because VMI's attack on validity would likely fail. H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 387, 2 USPQ2d 1926, 1928 (Fed.Cir.1987). Reliance merely upon the presumption of validity authorized by 35 U.S.C. Sec. 282 (1982) "is too slim a reed to support a preliminary injunction in a patent case," Mayview Corp. v. Rodstein, 480 F.2d 714, 718, 178 USPQ 449, 451-52 (9th Cir.1973); accord T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc., 821 F.2d 646, 647-48, 3 USPQ2d 1316, 1318 (Fed.Cir.1987) (presumption of validity "is procedural, not substantive" and insufficient to support preliminary injunction), unless the accused infringer is silent on the issue. Roper, 757 F.2d at 1270, 225 USPQ at 347.
 
 SCOPE OF THE CLAIM
 
 16
 The issue of whether an accused device falls within the scope of the claim involves, as a first step, claim interpretation. Specifically, here, APMA's likelihood of success on the issue depends upon whether the claim term "removable housing cover" means a "cap strap" or more broadly means a cap strap, dome, and fasteners. The meaning of the term is hotly disputed and is far from clear. The district court made no specific interpretation of the claim term at issue. It found APMA likely to succeed on the infringement issue because the accused MeterHat "seems to read on Claims 14 and 15 of the patent in issue."* That statement, in my view, is too tentative to amount to a firm conviction that the accused device is covered by the claim.
 
 
 17
 In upholding the injunction, the majority undertakes to resolve the dispute with respect to the claim term and chooses to give it a broad scope, thereby deciding the issue on the basis of an incomplete record. The existence of this conflict creates sufficient doubt about the likelihood of success to preclude granting a preliminary injunction. 11 C. Wright & A. Miller, supra, Sec. 2948, at 455 (and cases cited therein). This court has cautioned that the "[i]nitial consideration of evidence is not the appellate role" in reviewing a decision on a motion for preliminary injunction. H.H. Robertson, 820 F.2d at 389, 2 USPQ2d at 1929. The majority does not heed that caution.
 
 
 18
 IRREPARABLE INJURY, BALANCE OF HARDSHIP, PUBLIC INTEREST
 
 
 19
 Even if APMA had proven likely success on the merits of its claim, injunctive relief would not necessarily follow. Roche Prods., Inc. v. Bolar Pharmaceutical Co., 733 F.2d 858, 866, 221 USPQ 937, 943 (Fed.Cir.), cert. denied, 469 U.S. 856 (1984). Each of the four equitable elements must be weighed and balanced before a preliminary injunction is granted. See, e.g., Datascope Corp. v. Kontron Inc., 786 F.2d 398, 401, 229 USPQ 41, 43 (Fed.Cir.1986). On the question of irreparable injury, the court stated only that "[m]anufacture and sale of what is apparently an infringing product is irreparable harm." There is no legal basis for a presumption of irreparable harm from the fact of infringement. Such an analysis would collapse separate requirements into one and effectively alter the legal standard of preliminary injunctive relief. Accordingly, the court erred in using its finding of likely success on the merits, to support--without more--its conclusion of irreparable harm.
 
 
 20
 The purpose of a preliminary injunction is to preserve the status quo pending litigation on the merits. See, e.g., Smith Int'l, 718 F.2d at 1578, 219 USPQ at 690. Before this litigation, as the district court found, APMA's product embodying the invention had not been successful. On the other hand, the court found VMI's MeterHat was the subject of a contract with the City of Philadelphia and VMI could "expect other contracts to follow, unless an injunction is entered." Thus, APMA's product was not selling; VMI's product was. As a result of the injunction, VMI lost the Philadelphia contract. APMA was not even a candidate for the contract. I do not see how the status quo has been preserved or why an award of damages, if APMA prevailed, would be insufficient protection for APMA. See Roche Prods., 733 F.2d at 866, 221 USPQ at 943 ("The district judge, before getting into the issue of equitable relief, must determine if he can deal with the case by adequate money damages. If he can, the predicate for equitable relief of a harsh, or even a mild, character is gone.").
 
 
 21
 Substantial deference is normally due the district court's equitable judgment. That is not true, however, when the court fails to provide an adequate analysis supporting the reasons for its judgment. Here, there are too many unanswered questions for this court to conclude that APMA met its burden of proving a clear right to extraordinary relief.
 
 
 22
 Accordingly, for the above reasons, I would reverse and remand.
 
 
 
 *
 VMI is right, of course, that the district court's opinion contains misstatements, such as its statement that "[t]he hat seems to read on Claims 14 and 15." This, however, is a not uncommon inversion of the proposition that the claims read on the structure; structures cannot be "read" on anything. We comprehend what was meant. We review judgments, however, not opinions, see, e.g., Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 781, 218 USPQ 673, 677 (Fed.Cir.1983), and despite the misstatements, we are not convinced that the court's conclusion, i.e., that there is a reasonable likelihood that APMA will succeed on infringement, is erroneous
 
 
 *
 As the majority notes, the court's statement is a not uncommon inversion of the law of infringement. Moreover, the court's analysis found "no difference between the two [devices] which requires any spark of genius to conceive." The "spark of genius" test, established by the Supreme Court in Cuno Eng'g Corp. v. Automatic Devices Corp., 314 U.S. 84, 91 (1941), addressed the issue of patentability, not infringement. Moreover, the last sentence of section 103, enacted in 1952, explicitly rejected the test